CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 01 2019

JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| **SALEM TOOLS, INC.,** | |
| **Plaintiff,** | |
| **v.** | Civil Action No. 7:19cv738 |
| **LANDMARK TECHNOLOGY A, LLC,** | |
| **Defendant.** | **JURY TRIAL DEMANDED** |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Salem Tools, Inc. ("Salem Tools"), by and through its attorney of record, files this Complaint for Declaratory Judgment of Non-Infringement and Declaratory Judgment of Invalidity of U.S. Patent No. 7,010,508 ("the '508 Patent") against Defendant Landmark Technology A, LLC ("Landmark Technology") and hereby acknowledges, on knowledge of its own actions and information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This is an action for declaratory judgment that Salem Tools does not infringe any valid claim of the '508 Patent and that the '508 Patent is invalid. Accordingly, Salem Tools brings this action seeking a declaration that it has not infringed and does not infringe any valid and enforceable claim of the '508 Patent. Additionally, Salem Tools seeks a judgment that Landmark Technology's repeated attempts to enforce and license the '508 Patent are in bad faith and constitute unfair and deceptive trade practices.

2. A true and correct copy of the '508 Patent is attached as **Exhibit A.**

## PARTIES

3. Salem Tools is a Virginia corporation with its principal place of business at 1602 Midland Road, Salem, VA 24153.

4. On information and belief, Defendant Landmark Technology is a North Carolina limited liability company having its principal office at 2530 Meridian Pkwy Suite 300, Durham, NC 27713 and registered office at 120 Penmarc Drive Suite 118, Raleigh, NC 27603.

## JURISDICTION AND VENUE

5. The Court has original and exclusive subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this Complaint states claims arising under an Act of Congress relating to patents, 35 U.S.C. § 271.

6. This Complaint also arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 *et seq*. based on the declaratory judgment sought by Salem Tools due to Landmark Technology's repeated accusations against Salem Tools for patent infringement and its pattern of actual litigation concerning the '508 Patent, thereby giving rise to an actual case or controversy.

7. By sending demand letters, Landmark Technology has directly targeted Salem Tools, a Virginia resident, and intentionally conducted its business in the Commonwealth of Virginia.

8. This Court has personal jurisdiction over Landmark Technology. Upon information and belief, Landmark Technology conducts substantial business in this judicial District, including regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from individuals and entities in Virginia. Upon information and belief, Landmark has purposefully and repeatedly directed its activities at residents of Virginia, including sending letters to other companies based in Virginia, asserting infringement of the '508

Patent and demanding payment of money. Thus, Landmark Technology has sufficient minimum contacts with the Commonwealth of Virginia to satisfy the Virginia long-arm statute, Va. Code Ann. § 8.01-328, and Constitutional due process requirements because Landmark Technology regularly conducts business activities in Virginia.

9. Further, this Court has personal jurisdiction over Landmark Technology arising from Landmark Technology's own purposeful and tortious conduct directed at Virginia and its residents and occurring in the Commonwealth of Virginia.

10. Landmark Technology has a well-documented history of sending demand letters accusing companies of infringing Landmark Technology's rights regarding the '508 Patent and related patents, offering to provide the alleged infringers a non-exclusive license to use the patent at issue for a fee and suing these companies if they do not pay Landmark Technology for a license to use the subject patent. Salem Tools received two such demand letters from Landmark Technology in August and September of 2019 accusing Salem Tools of infringement and demanding a payment of $65,000 for a license. Landmark Technology's demand letters to Salem Tools, both separately and taken together with Landmark Technology's history of filing patent infringement lawsuits regarding the '508 Patent and other patents, exemplifies the actual case or controversy under 28 U.S.C. §§ 2201 and 2202 arising from Landmark Technology's demand letters to Salem Tools.

11. Venue is proper in the Western District of Virginia pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b), as a substantial part of the events giving rise to the claims in this Complaint occurred in this Judicial District and Salem Tools' principal place of business is in this Judicial District.

12. Under *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017) and its progeny, and 28 U.S.C. § 1400, any suit for infringement upon the '508 Patent must be brought in the judicial district where Salem Tools resides or has a regular or established place of business.

13. Salem Tools both resides and has its regular, established place of business in the Western District of Virginia; thus, venue is appropriate in this Court.

## FACTUAL BACKGROUND

### General Background

14. On information and belief, Landmark Technology is an entity commonly referred to as a patent troll whose business activities solely consist of sending demand letters seeking patent license fees and receiving license fees in return, or filing lawsuits against purported patent infringers who fail to pay the license fee demanded. On information and belief, Landmark Technology claims to have "exclusive rights" to the '508 Patent with the right to enforce the '508 Patent.

15. On information and belief, Landmark Technology's sole business model and activity involves sending letters accusing others of patent infringement and threatening litigation. Upon information and belief, Landmark Technology does not make, use, or sell any product or services of its own.

16. On information and belief, Landmark Technology is involved in at least seven other lawsuits against various companies involving claims about the '508 Patent.

17. Landmark Technology and its predecessor companies, as patent trolls, have sued hundreds of companies for nuisance value amounts based on likely-invalid and non-infringed patents, wasting valuable court resources to force companies to pay them for baseless intellectual

property because it is less expensive to settle for nuisance amounts than litigate. Exploiting the U.S. federal court system to gain leverage over those it accuses of infringement—without having any intention of actually enforcing its patent based on the merits—is the hallmark of Landmark Technology's business model.

18. Landmark Technology also appears to systematically and quickly settle litigations prior to any potentially damaging rulings on the baselessness of Landmark Technology's claims, thereby preserving its ability to extract licensing fees from other companies moving forward.

**Landmark Technology's Demand Letters to Salem Tools**

19. On or about August 2, 2019, Landmark Technology, stating that it has "exclusive rights" to patents including "its '508 [P]atent," sent its first demand letter (the "First Letter") to Mr. William Powell, Jr. of Salem Tools, Inc., asserting that Salem Tools infringes the '508 Patent, claiming that "the specific functionalities implemented by ST Solutions using their servers and devices interfaced to ST Solutions' web servers constitutes use of the technology taught within the meaning of Claim 1 of the '508 patent." A true and correct copy of the First Letter as received is attached as **Exhibit B**.

20. The First Letter does not include an element by element analysis, or any other type of straight-faced, reasonable, or proper description of Salem Tools' services purported to infringe, and instead simply includes a link to two pages on Salem Tools' website[1], along with generic accusations, which upon information and belief, are common to most or all of the demand letters Landmark Technology sends to alleged infringers of the '508 Patent. Landmark Technology further demanded payment through deceptive and misleading information regarding the importance of the '508 Patent as a "pioneer patent[]" covering "widely regarded" technology.

[1] *See, e.g.*, https://www.stsolutionsonline.com

21. A three-panel board of expert judges at the U.S. Patent & Trademark Office ("USPTO") has already stated that there is no evidence that the '508 patent is in any way a "pioneer patent." (*See* **Exhibit C**.)

22. The First Letter concludes by offering Salem Tools a "non-exclusive license to its '508 patent, for $65,000." The First Letter requested a response within 15 days.

23. Landmark Technology stated in its letter that the $65,000 dollar number is a "substantial discount to the historical licensing price of Landmark's portfolio" but it appears Landmark Technology offers everyone the same number. Accordingly, upon information belief, this statement is false.

24. Nowhere in the First Letter did Landmark Technology indicate that its offer was negotiable. Upon information and belief, this tactic is designed to extract payment from letter recipients, knowing that the payment would be significantly less expensive than defending against even an invalid patent in federal court.

25. On or about September 20, 2019, Landmark Technology sent a second demand letter to Mr. Powell (the "Second Letter"). The Second Letter reiterated the licensing offer to Salem Tools for a "non-exclusive license to its '508 patent for $65,000." A true and correct copy of the Second Letter as received is attached as **Exhibit D**. Nowhere in the Second Letter did Landmark Technology indicate that its offer was negotiable.

26. Salem Tools had no knowledge of Landmark Technology or the '508 Patent until receipt of the First Letter.

**The '508 Patent**

27. The '508 Patent, entitled "Automated Multimedia Data Processing Network," issued on or about March 7, 2006. The named inventor of the '508 Patent is Lawrence B. Lockwood ("Lockwood").

28. The '508 Patent is directed to "terminals used by banking and other financial institutions to make their services available at all hours of the day from various remote locations." (Exhibit A, col. 1, ll. 22-25 (emphases added).) Salem Tools is not a banking or other financial institution; Salem Tools sells tools.

29. The patent states: "The principal object of this invention is to provide an economical means for *screening loan applications*." (*See* Exhibit A, col. 1, ll. 46-47 (emphases added).) Yet that description and the financial institution aspects of the patent, which limit the claims as explained below, have nothing to do at all with Salem Tools' business of distributing tools. Other objects of the invention include: "a system that ties together financial institution data processing, the computer services of a credit reporting bureau, and a plurality of remote terminals. Each remote terminal displays the live image of a fictitious loan officer who helps the applicant through an interactive series of questions and answers designed to solicit from the applicant all the information necessary to process his loan application." (*See* Exhibit A, col. 1, l. 64 - col. 2, l. 4.)

30. The Patent Trial and Appeal Board ("PTAB") at the USPTO determined that the claims of the '508 Patent are directed to "a financial product or service" under the America Invents Act ("AIA") and that the claims are more likely than not invalid. (Exhibit C, at 12.)

31. Because of the PTAB decision, the '508 Patent no longer enjoys a presumption of validity.

32. As such, no reasonable litigant, judge, or jury could believe that the '508 patent reads on a website that sells tools, or that the patent is valid.

33. Figure 1 is representative of the claims of the '508 Patent:

34. The terminals **105** (seemingly described as "stations" in the claims) of the claimed method are analogous to ATMs or other smart self-service/automated machines where a user visits the remote terminal and interacts with that terminal. Part of the invention was to move beyond typical vending machines and into the realm of "more complex types of goods and services distribution which requires a great deal of interaction between individuals or between individuals and institutions." (Exhibit A, col. 1, ll. 40-43.)

35. According to the patent, remote terminals present a live image of a "fictitious" automated loan officer who would guide the users through questions and then "make a decision based on all the information gathered..." including offering a loan amount. (*See* Exhibit A, col. 1, l. 64 - col. 2, l. 11.)

36. According to the patent and prosecution history, the '508 Patent presents a solution to a problem of tying together financial institution data processing, the computer services of a credit reporting bureau, and a plurality of remote terminals. Each remote terminal displays a live image and interactive series of questions. (*Id.*)

37. According to the patent, prosecution history, and claims of the '508 Patent, the claims of the '508 Patent require an interactive video presentation on the video display of the station or terminal. (Exhibit A, col. 7, ll. 4-12.)

38. According to the '508 Patent, because each user using the terminal (or station) of the '508 Patent will provide different answers to earlier questions, the user may be provided with subsequent questions different from those posed to another user. (*See* Exhibit A., col. 4, ll. 61-64.)

39. According to the patent and prosecution history, each user of the claimed method of the '508 Patent will be provided with an individualized presentation via the video-based interface. (*See* Exhibit A, col. 3, ll. 54-58.)

40. The claims of the '508 patent require that its method make suggestions, or independently provide something different than what was requested but more responsive to the user's needs, and output said suggestions via the video display. Note, for example, the following language from claim 1 (emphases added):

> means for interactively directing the operation of said computer, video display, data receiving and transmitting means, and mass memory comprising means for holding an operational sequencing list, means for processing said operator-entered information, inquiries, and orders according to backward-chaining and forward-chaining sequences, and means responsive to the status of said computer, display, mass memory, and data receiving and transmitting means for controlling their operation;

said means for processing including means for analyzing said operator-entered information and means, responsive to said means for analyzing, for presenting additional inquiries in response to said operator-entered information...

41. The claims of the '508 Patent require forward-chaining and backward-chaining, which happens at the situs of the station or terminal, which in essence, appears to mean that the claimed terminal or station of the '508 Patent interacts with a user who visits the remote location of the terminal in order to obtain a financial product or service; the terminal presents the user with a live image of a "fictitious" financial institution employee (*e.g.*, a fictitious loan officer) who first tells the user how to use the terminal; the user and the fictitious employee then engage in an iterative back and forth to answer what the computer determines are relevant questions, including based on feedback from the user; the fictitious employee is able to make suggestions for financial products or services, including providing a loan amount offer.

**The '508 Patent's Prosecution History Further Narrows the Patent's Scope**

42. The patent prosecution of the '508 Patent from filing to issuance was a 10 year odyssey at the USPTO, where numerous concessions had to be made by Landmark Technology in order to get the patent allowed. During prosecution, Lockwood made clear that he believes his invention dates back to May 24, 1984 (the so-called priority date).

43. The Examiner initially rejected the patent application that ultimately issued as the '508 Patent (the "'772 Application") under 35 U.S.C. § 112 as being indefinite, non-enabling, and lacking specification support; and under 35 U.S.C. § 103 as being an obvious variation of prior technology in an earlier Lockwood patent.

44. In response, Lockwood stated that support for the means-plus-function claims in the '508 Patent could be found in the specification, using as support information from the specification that limits the claims to "financial institution[s]," "process[ing] loan applications," "periodically

polling the various terminals…in order to verify their status and proper operation," and "fictitious officer."

45. As explained in 35 USC § 112(f), "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and <u>such claim shall be construed to cover the corresponding structure, material, or acts described in the specification</u> and equivalents thereof." (Emphasis added.) Therefore, the limitations from the specification are read into the claims for these means-plus-function aspects of the '508 Patent.

46. The broadest reasonable interpretation of a means plus function claim will, therefore, be drawn to the structure, material or acts described in the specification and their equivalents. (*See* M.P.E.P. 2181.)

47. Salem Tools is not a "financial institution," does not "process loan applications," does not "periodically poll[] the various terminals…in order to verify their status and proper operation," and does not have a "fictitious officer." Upon information and belief, "stations" according to the Demand Letter from Landmark Technology are a customer's computer or phone where they submit their orders for tools, for example. Salem Tools does not periodically "poll[]" their customers computers or phones to verify their status and proper operation.

48. Further, in response to the obviousness rejection, Lockwood argued claim 1 "employs a type of problem solving technique known in the art as '<u>backward</u>-chaining.' Backward-chaining is a way to emulate human inductive reasoning or goal-directed reasoning." (Emphasis added.)

49. Salem Tools' very typical e-commerce platform does not practice "backward-chaining" as claimed in the '508 Patent, to the extent Salem Tools can try to discern the meaning of that vague and insufficiently described element of the claims.

50. Lockwood also argued claim 1 "employs a type of problem solving technique known in the art as 'forward-chaining.' Forward-chaining is a common term of art designating a way to emulate human deductive reasoning or data-driven reasoning." (Emphasis added.)

51. Salem Tools' very typical e-commerce platform does not practice "forward-chaining" as claimed in the '508 Patent, to the extent Salem Tools can try to discern the meaning of that vague and insufficiently described element of the claims.

52. On March 7, 2006, the '508 Patent issued.

53. Upon information and belief, the patent was challenged at the USPTO according to the program for requesting review by the USPTO's PTAB for patents that are business method patents. The PTAB—a panel of three expert judges—decided to re-review the patent, holding it was "more likely than not" that the '508 Patent's claims were invalid. (*See* Exhibit C.)

54. Specifically, the Board held that the patent was more likely than not invalid under 35 U.S.C. § 112. (*Id.*) Salem Tools agrees and Salem Tools cannot infringe what is hopelessly flawed claim language, including what exactly constitutes backward-chaining and forward-chaining according to the claims.

55. Upon information and belief, there was no re-review final decision because the parties, including Lockwood, settled prior to a final decision.

56. Thus, in order to infringe the claims of the '508 Patent, if it were valid, which Salem Tools does not concede, Salem Tools must practice every single limitation/element of claim 1.

57. Further, the Salem Tools' accused system must include every limitation as argued by Lockwood during prosecution.

58. Claim 1 of the '508 Patent contains a large number of means plus function limitations. Under 35 U.S.C. § 112(f), the claims are limited to the function described in the specification.

The brief specification does not provide the required structure of the various "means," as noted by the Patent Trial and Appeal Board. This is made worse by the narrow and specific scope that Landmark Technology repeatedly described to have during prosecution. The required level of detail is not found anywhere in the specification.

**Salem Tools Does Not Infringe the '508 Patent**

59. Salem Tools does not infringe claim 1, or any other claim of the '508 Patent, because Salem Tools does not practice every limitation of, by way of example, claim 1.

60. Upon information and belief, Landmark Technology failed to undergo a reasonable infringement analysis prior to sending its two demand letters.

61. Salem Tools markets online through its website, www.stsolutionsonline.com. In order for a customer to access www.stsolutionsonline.com, the customer must first choose to install third party internet browser software (such as: Internet Explorer, Firefox, or Safari) onto the customer's computer or device. A customer can then "visit" Salem Tools' website by typing a URL into a text box of the browser. This customer action causes the customer's internet browser to send a request to a third-party's web server which hosts Salem Tools' website via a standard internet connection. In response to the request from the customer's browser, a third-party web server causes Salem Tools' website to be displayed onto the customer's device.

62. If a customer decides to press "shop" on the stsolutionsonline.com website, they are re-directed to third party servers, which use the third party's software that is licensed by Salem Tools. The customer then interacts with the menus displayed on the customer's device in order to select and order tools.

63. Salem Tools' website is hosted at a third party's web server farm which, in turn, communicates with Salem Tools' "back end" computers when necessary. Salem Tools does not

own, operate, or host its own web servers nor a web server farm. Furthermore, Salem Tools obviously does not own, operate, and/or control any of its customers' computers or mobile devices used to access its website. Also, much of the linking and data sending/receiving as claimed by the '508 Patent would be practiced by the Internet as a whole, clearly something Salem Tools does not own or have any control over.

64. Landmark Technology alleges that Salem Tools servers constitute an infringing use of claim 1 of the '508 Patent when customers use devices (*i.e.*, "stations") to interact with Salem Tools' web servers. Salem Tools does not infringe any valid and enforceable claim of the '508 Patent for reasons including, but not limited to, the fact that the stations (*i.e.*, customer devices) accessing Salem Tools' website are not owned or used by Salem Tools. Additionally, even if such terminals/stations were owned or used by Salem Tools, such terminals/stations do not utilize any backward- or forward-chaining technology, which is required by claim 1 of the '508 Patent based on concessions made during prosecution and by the inventor himself; and no server, computer or device associated with Salem Tools uses forward chaining technology at all, which is also required by claim 1 of the '508 Patent.

65. Salem Tools' system does not utilize all elements of the prolix '508 Patent claim 1, or any other claim. Also, to the extent any of the elements are practiced, several elements are not practiced by Salem Tools, but rather by third parties.

**COUNT I – DECLARATION OF INVALIDITY OF U.S. PATENT 7,010,508**

66. Salem Tools incorporates by reference the allegations in paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67. Landmark Technology claims to have exclusive rights to the '508 Patent.

68. Landmark Technology demanded that Salem Tools pay for a license to the '508 Patent within 15 days.

69. Landmark Technology is in the business of threatening litigation and following through on that threat specifically with respect to the '508 Patent. A review of Landmark Technology's record demonstrates a consistent and frequent pattern of litigation, creating a reasonable fear that Salem Tools was Landmark Technology's next target.

70. The claims of the '508 Patent are invalid under at least any one of 35 U.S.C. §§ 101, 102, 103, and 112.

71. The claims of the '508 Patent do not constitute patent eligible subject matter pursuant to 35 U.S.C. § 101, and therefore are an invalid or ineligible patent on an abstract idea. The '508 Patent claims the abstract idea of automated data processing of business transactions. Nothing in the claims, "transforms the nature of the claims" into patent eligible subject matter. *Mayo Collaborative Services v. Prometheus Labs, Inc.*, 566 U.S. 66 (2012). Furthermore, "[t]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

72. Additionally, the '508 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103.

73. The claims of the '508 Patent are also invalid because the specification fails to provide any structure or necessary support for the numerous means plus function elements recited in the claims, pursuant to 35 U.S.C. § 112. The claims are altogether vague, insufficiently described, and non-enabled.

74. Based on Landmark Technology's letters, the imminent threat of litigation for patent infringement, a consistent pattern of carrying out its threat, as well as Salem Tools' denial of

infringement, an actual case or controversy exists as to whether Salem Tools infringes any valid claim of the '508 Patent.

75. Salem Tools is entitled to a declaration that the claims of the '508 Patent are invalid.

**COUNT II – NON-INFRINGEMENT OF U.S. PATENT NO. 7,010,508**

76. Salem Tools restates and incorporates by reference the allegations in paragraphs 1 through 75 of this Complaint as if fully set forth herein.

77. Landmark Technology claims to have exclusive rights to the '508 Patent.

78. Landmark Technology has demanded that Salem Tools pay for a license to the '508 Patent within 15 days.

79. Landmark Technology is in the business of threatening litigation and following through on that threat specifically with respect to the '508 Patent. A review of Landmark Technology's record demonstrates a consistent and readily apparent pattern of litigation.

80. Landmark Technology failed to conduct a proper pre-demand due diligence prior to demanding $65,000 from Salem Tools.

81. Landmark Technology has made numerous limiting admissions regarding the scope of the claims of the '508 Patent during its prosecution and in subsequent USPTO and litigation proceedings.

82. Even a cursory pre-demand research effort would have established that under the plain language of the claim, and especially under the much narrower reading argued by the inventor and Landmark Technology during prosecution and afterwards, Salem Tools' system and/or technology does not infringe any valid and enforceable claim of the '508 Patent.

83. Salem Tools has not infringed and does not infringe any valid and enforceable claim of the '508 Patent, whether literally or under the doctrine of equivalents.

84. Additionally, Salem Tools is not liable for any induced, contributory, divided, or other indirect infringement of any valid and enforceable claim of the '508 Patent. Neither Salem Tools, nor its customers who access its website, nor anyone associated with Salem Tools, utilizes every element of any claim in the '508 Patent as is required for infringement.

85. Based on Landmark Technology's letters and accusations of patent infringement, especially in light of its pattern of litigation, and Salem Tools' denial of infringement, a substantial, immediate, and real controversy exists between Salem Tools and Landmark Technology regarding whether Salem Tools directly or indirectly infringes or has infringed the '508 Patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '508 Patent.

86. At least in part, the controversy arises from Landmark Technology's demand letters to Salem Tools claiming that Salem Tools infringes at least claim 1 of the '508 Patent, and providing Salem Tools the option to pay for a license to the '508 Patent within fifteen (15) days of the First Letter being sent. Landmark Technology's demand letters alone, and in combination with Landmark Technology's widespread campaign of filing patent infringement lawsuits against licensing targets that refuse to pay the license fee Landmark Technology demands, clearly demonstrates Landmark Technology's intent to seek to erroneously enforce the '508 Patent against Salem Tools.

87. A judicial declaration that Salem Tools does not directly or indirectly infringe any valid and enforceable claim of the '508 Patent is necessary and appropriate so that Salem Tools may ascertain its rights regarding the '508 Patent and to prevent further injury to Salem Tools.

88. While Salem Tools submits it does not infringe the '508 Patent and is entitled to a declaration stating as much, Salem Tools is alternatively entitled to a declaration that Landmark Technology may not recover damages prior to August 2, 2019.

**COUNT III –
FEDERAL UNFAIR AND DECEPTIVE TRADE PRACTICES
UNDER 15 U.S.C. § 45(a)(1)**

89. Salem Tools restates and incorporates by reference the allegations in paragraphs 1 through 88 of this Complaint as if fully stated herein.

90. Landmark Technology's allegations are objectively baseless given a lack of actual allegations related to the specific area in which Salem Tools' services or technology allegedly infringe the '508 Patent.

91. Landmark Technology failed to reasonably construe the claims, then failed to compare said claims to Salem Tools' services or technology, but instead only generally pointed to Salem Tools' webpage (along with boilerplate, generic computer/server terminology) to allege that the webpage somehow infringes the claims of the '508 Patent.

92. Landmark Technology's infringement allegations are objectively baseless given the deceptive and misleading information regarding the importance of the '508 Patent as a "pioneer patent." In fact, the '508 Patent relates to outdated and obsolete technology for screening loan applications based on terminals at bank branches, which was confirmed by the USPTO Patent Trial and Appeal Board.

93. A District Attorney in Wasco County, Oregon has already decided that effectively identical practices by Landmark Technology regarding another patent were "without merit" and "deceptive." (*See* **Exhibit E**, p. 5 of letter (see bottom right hand corner) (blank pages from website where exhibit downloaded deleted) (emphases added).)

94. By knowingly threatening litigation in bad faith, Landmark Technology is engaging in unfair methods, and unfair or deceptive acts or practices in or affecting commerce.

95. Landmark Technology systematically ends litigation involving the '508 Patent prior to claim construction or any decision on the merits, thereby artfully preserving its ability to argue for plain language scope of an irrelevant patent and continuing to torment innocent companies with a patent that Landmark Technology knows is invalid under the current patent laws.

96. Landmark Technology's actions constitute bad-faith patent litigation because Landmark Technology knows, or should know, that the patent scope relates to outdated and irrelevant technology which is no longer used by today's e-commerce technology and cannot possibly be infringed.

97. Salem Tools seeks an injunction and such other equitable relief as deemed appropriate.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Salem Tools, Inc. respectfully requests the following relief:

a. A declaration that Salem Tools' services, systems, technology, and/or practices have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '508 Patent, whether literally or under the doctrine of equivalents;

b. A declaration that the '508 Patent is invalid for failure to comply with the requirements of 35 U.S.C., including at least §§ 101, 102, 103 and/or 112;

c. Declaring that Landmark Technology's conduct constitutes unlawful, unfair, and deceptive trade practices;

d. An order declaring that this is an exceptional case and awarding Salem Tools its costs, expenses, disbursements and reasonable attorneys' fees under 35 U.S.C. § 285;

e. An order awarding Salem Tools all damages caused by Landmark Technology's unlawful acts, including punitive damages and pre- and post-judgment interest, as provided by law; and

f. That Salem Tools be granted such other and further legal and equitable relief against Defendant Landmark Technology as the Court deems appropriate.

**JURY DEMAND**

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: November 1, 2019

Respectfully submitted,

**SALEM TOOLS, INC.**

By: ______________________

Nathan A. Evans (VA Bar No. 46840)
Zachary S. Agee (VA Bar No. 88966)
WOODS ROGERS PLC
123 East Main Street, Fifth Floor
Charlottesville, VA 22902
(434) 220-6829 (Phone)
(434) 220-5687 (Fax)
nevans@woodsrogers.com
zagee@woodsrogers.com

ATTORNEY FOR PLAINTIFF,
SALEM TOOLS, INC.